UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOSEPH JAY FORD,

                        Petitioner,                    Case No. 2:17-cv-129

v.                                                     Honorable Gordon J. Quist

DUNCAN MACLAREN,

                        Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Joseph Jay Ford is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan.  Following a six-day jury trial in the Kent County Circuit Court, Petitioner was convicted of one count of operating a vehicle while intoxicated (OWI) causing death and one count of a moving violation causing death.  On May 14, 2014, the court sentenced Petitioner as a third habitual offender to concurrent prison terms of 12 years, 6 months to 30 years for the OWI offense and 1 year for the moving violation offense.

On July 26, 2017, Petitioner timely filed his habeas corpus petition raising three grounds for relief, as follows:

I.      Trial court failed to suppress the hospital blood draw.

II.     Insufficient probable cause for the search warrant to draw Petitioner's blood.  Michigan State Police blood draw should have been suppressed.

III.    Trial court violated due process and engaged in judicial fact finding at sentencing.

(Pet., ECF No. 1, PageID.6-7.)  Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are noncognizable or without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are noncognizable or without merit. Accordingly, I recommend that the petition be denied.

<u>**Discussion**</u>

### I.        Factual allegations

On October 10, 2013, Petitioner ran a red light at the intersection of 36th Street and Patterson Avenue in Kentwood, Michigan.  He collided with a vehicle driven by Eric Fischer. Andrea Herrera, a passenger in Fischer's vehicle, died by the time she arrived at the hospital. Fischer died on the operating table.  The Michigan Court of Appeals summarized the relevant trial evidence as follows:

> A forensic pathologist testified that both victims had died as a result of the collision. Fischer's blood alcohol level was .11 percent at autopsy, although the pathologist was unsure whether the test was serum or whole blood.  The pathologist testified that Fischer's blood alcohol level was not a significant contributing factor to his death.

> Kent County Deputy Christopher Goehring testified that he spoke with defendant while defendant was in the back of an ambulance.  He could smell a moderate amount of alcohol coming from defendant.  Defendant told Goehring that he could not remember the whole night.  He remembered where he was coming from, but nothing else.  Defendant also said that he had had two beers.  Other than the smell of alcohol and defendant's admission that he had been drinking, Goehring did not note any signs that defendant was intoxicated.  The ambulance took defendant to St. Mary's Hospital.  Goehring also went to the hospital.

> Dr. Julie Shanaver, an emergency room physician at St. Mary's Hospital, treated defendant.  For medical purposes, she requested a chemical analysis of defendant's blood.  Defendant's blood was drawn at 11:37 p.m.  Defendant's blood alcohol result was .125 percent.  The hospital uses a serum test.

At the hospital, Goehring filled out an affidavit for a search warrant for defendant's blood.  The warrant was signed by a magistrate.  Suanne Unger, a nurse in the emergency room, drew two samples of defendant's blood at 12:04 a.m. and 12:05 a.m. on October 11, 2013.  The samples were sent to the Michigan State Police (MSP) crime laboratory.

After defendant was released from the hospital, Goehring arrested defendant and then interviewed him.  Defendant waived his *Miranda* rights. Defendant said that he remembered more.  He had dropped his friend off in Kentwood and then got lost.  He made a wrong turn, and then was going north on Patterson.  He approached the 36th Street intersection; the light was green.  The black Mazda entered the intersection and there was an accident.  He was going the speed limit, which was 55 miles per hour.  He had had two beers earlier that night.

Experts from the MSP crime laboratory testified that the two samples of defendant's blood showed a blood alcohol level .086 and .088 percent by whole blood test.  Further, controlled substances were found in defendant's blood, including amphetamines, morphine, and promethazine and promethazine metabolite.

Michele Glinn testified as an expert in forensic toxicology, the analysis of blood, and procedures for a crime laboratory.  Glinn reviewed the results and reports from the crime laboratory and St. Mary's Hospital.  Glinn testified that "whole blood" is blood that comes from a person's arm.  It contains red and white blood cells, as well as other proteins and clotting factors.  Hospitals often separate out the red blood cells and proteins, ending up with the water fraction of the blood.  Depending on the amount of filtering, this part of the blood is plasma or serum.  According to Glinn, because "alcohol partitions into the water," the serum alcohol level is higher than the whole blood alcohol level.  By reducing a serum alcohol level by 16 or 18 percent, one can obtain the whole blood alcohol level.  According to Glinn, if defendant's serum alcohol level was reduced by 16 percent, his whole blood alcohol level was .105 percent for the hospital blood draw.  Glinn further testified that, because a body metabolizes alcohol, the difference in time between the blood draws for the hospital and for the police could explain the difference in the whole blood alcohol levels.  Specifically, because the blood draw for the police was done at a later time, Glinn would expect that the alcohol level in the blood from that draw to be lower than in the blood drawn for the hospital.  According to Glinn, a decrease in defendant's blood alcohol level from .105 to .087 percent is consistent with the general metabolic range.  Glinn further testified that the amphetamine level of defendant's blood was consistent with one dose of the prescription medication Adderall.

3

(Mich. Ct. App. Op., ECF No. 8-16, PageID.540-542.)[1]

   The jurors deliberated for an entire day.  They appeared to struggle with reconciling victim Eric Fischer's blood alcohol test results with the conclusion that Petitioner had caused Fischer's death by operating a vehicle while intoxicated.  (Trial Tr. VI, ECF No. 8-13.)  That struggle was manifested in the jury's questions for the trial court and in the jury's seemingly inconsistent resolution of the charge that Petitioner caused the deaths of the two victims by operating a vehicle while intoxicated.  The jury found Petitioner guilty of that offense with respect to victim Herrera but not guilty of that offense with respect to victim Fischer.  (*Id.*, PageID.522.) The jury also found Petitioner guilty of reckless driving causing death with respect to victim Herrera, but guilty of the lesser offense of a moving violation causing death with respect to victim Fischer.  (*Id.*)

   Petitioner, with the assistance of counsel, directly appealed his convictions and sentences raising the same three issues in the Michigan Court of Appeals that he raises now in this Court, plus two issues relating to the jury instructions for the "moving violation causing death" conviction.  (Pet'r's Appeal Br., ECF No. 8-16, PageID.575.)  The court of appeals rejected Petitioner's challenges generally and affirmed the trial court; but, because of an issue regarding the instructions relating to the moving violation conviction, remanded to the trial court with instructions to determine which party asked for the "moving violation" instruction.  (Mich. Ct. App. Op., ECF No. 8-16, PageID.540-548.)  The Kent County Circuit Court docket sheet indicates

---

[1] Although Petitioner argues the blood sample test results should not have been admitted, he does not otherwise challenge the appellate court's description of the trial testimony.

that the parties stipulated to a resolution of the remand issue that left standing the moving violation conviction.  (ECF No. 8-1, PageID.221.) [2]

Petitioner filed a pro per application for leave to appeal in the Michigan Supreme Court raising only the three issues he raises in this Court.  (Pet'r's Appl. for Leave to Appeal, ECF No. 8-17, PageID.672-674.)  The supreme court denied leave by order entered May 2, 2016.  (Mich. Order, ECF No. 8-17, PageID.670.)  Petitioner did not file a petition for writ of certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.3.)  Instead, he filed the instant petition.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented

---

[2] The order of remand was, at best, a hollow victory for Petitioner.  Not only did the stipulated resolution ultimately go against him, but, by the time the court of appeals issued its opinion, he had fully served the sentence for the moving violation conviction.  Petitioner is now in custody on only the OWI causing death conviction.

in the state court proceeding."    28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

6

their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal

quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*,

160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This

presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th

Cir. 1989).

### III.    Admission of the hospital blood draw test results

Petitioner argues that the hospital blood test results—the draw taken for medical

reasons—should not have been admitted because it is unreliable expert opinion and, therefore, is

not properly admitted under Michigan Rule of Evidence 702.  The court of appeals rejected that

argument concluding that Rule 702 was inapplicable because the Michigan legislature had made

test results for blood drawn under those circumstances admissible by statute, Mich. Comp. Laws

§ 257.625a(6)(e).  (Mich. Ct. App. Op., ECF No. 8-16, PageID542-544.)[3]

The extraordinary remedy of habeas corpus lies only for a violation of the

Constitution.  28 U.S.C. § 2254(a).  Petitioner's claim, however, arises principally under state law:

he urges a particular interpretation of Mich. Comp. Laws § 257.625a(6)(e) and a specific

---

[3] The court of appeals noted that the blood test results would have been admissible under Rule 702, if the rule were
applicable.  (Mich. Ct. App. Op., ECF No. 8-16, PageID.544.)

application of Michigan Rule of Evidence 702.  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68.

Moreover, the decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit recognizes "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693,700 n.1 (6th Cir. 2018) (same).  Thus, this Court is bound by the state appellate court's determinations that the statute authorizes the admission of the blood test results, that the statute takes precedence over the state rule of evidence, and that the evidence was admissible under the state rule of evidence anyway.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 68.  State court application of state court rules, whether or not the application is a violation of the state rules, can rise to the level of a due process violation if it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach

accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.

Petitioner suggests that the trial court's determinations with respect to the expert's testimony may be in conflict with *Daubert v Merrell Dow Pharm., Inc*, 509 US 579 (1993).  In *Daubert*, the United States Supreme Court established a two-part test for the admissibility of scientific testimony, which requires a trial court to determine whether the proposed expert's testimony reflects valid scientific knowledge, and if it does, whether the expert's testimony "will assist the trier of fact to understand or determine a fact in issue."  *Id*. at 592.

The *Daubert* court was concerned with the admissibility of expert testimony under Federal Rule of Evidence 702.  *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("*Daubert* concerned the Federal Rules of Evidence which is not relevant to [federal habeas review of] appellant's [state court] conviction.").  As this Court stated in *Bal v. McKee*, No. 1:10-cv-21, 2010 WL 707356 (W.D. Mich. Feb. 23, 2010):

> [T]he Federal Rules of Evidence apply in federal trial proceedings, not in state trial proceedings.  The Supreme Court strictly engaged in statutory construction in interpreting Rule 702 in *Daubert*.  *See* 509 U.S. at 587.  The [Supreme] Court has never indicated that a failure to follow Federal Rule of Evidence 702 or *Daubert* rises to the level of a constitutional violation.  As a consequence, Petitioner cannot

show that the state court's evidentiary determination was either contrary to or an unreasonable application of established Supreme Court precedent.

*Bal*, 2010 WL 707356, at *12.  Thus, even if admitting the hospital blood draw test results runs afoul of Rule 702 of the Federal Rules of Evidence or *Daubert*, such a violation does not rise to the level of a constitutional violation cognizable on habeas review.

### IV.    Stay and abeyance

In Petitioner's reply brief, he introduces for the first time an argument that the hospital blood draw may have violated Petitioner's Fourth Amendment right to be free of unreasonable searches and seizures.  (Pet'r's Reply Br., ECF No. 9, PageID.804-806.)  Petitioner never raised this argument in the state courts.  Recognizing that he must exhaust his available state court remedies before this Court may grant relief, Petitioner then asks the court to stay this proceeding and hold it in abeyance, under the authority of *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002), and *Rhines v. Weber*, 544 U.S. 269, 277 (2007), while Petitioner pursues his Fourth Amendment claim or, alternatively, an ineffective assistance of counsel claim based on failure to raise his novel Fourth Amendment claim.

The stay-and-abeyance procedure set forth in *Palmer* should be available only in limited circumstances because over-expansive use of the procedure would thwart the AEDPA's goals of achieving finality and  encouraging petitioners to first exhaust all of their claims in the state courts.  *See Rhines*, 544 U.S. at 277.  In its discretion, a district court contemplating stay and abeyance should stay the mixed petition pending prompt exhaustion of state remedies if there is "good cause" for the petitioner's failure to exhaust, if the petitioner's unexhausted claims are not "plainly meritless" and if there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Id.* at 278.

10

Here, delaying this action to permit Petitioner to pursue his unexhausted claims in this Court would be pointless.  Petitioner proposes to add a new claim more than two years after his conviction became final by the completion of direct appellate review.  That is well beyond the statute of limitations.

Habeas claims are subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured.  Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Petitioner's judgment of conviction became final 90 days after the Michigan Supreme Court denied leave to appeal. Therefore, his period of limitation began to run on July 31, 2016, and expired on July 31, 2017.

If Petitioner were to add new habeas claims now, such claims would obviously be filed more than one year after the period of limitations commenced running.  Thus, absent tolling, the claims would be time-barred.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").  Petitioner has not filed a state motion for collateral review (Pet., ECF No. 1, PageID. 66), and this petition does not toll the statute of limitations, *Duncan*, 533 U.S. at 181-82.

The one-year limitations period is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005).  A petitioner bears the burden of showing that he is entitled to equitable tolling.  *See Keenan*, 400 F.3d at 420; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court.  *See, e.g., Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009).  A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence v. Florida*, 549 U.S. 327, 335 (2007); *Hall*, 662 F.3d at 750; *Akrawi*, 572 F.3d at 260.

Petitioner has not raised equitable tolling or alleged any facts or circumstances that would warrant its application in this case.  The fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain period does not warrant tolling.  *See Allen*, 366 F.3d at 403-04; *see also Craig v. White*, 227 F. App'x 480, 482 (6th Cir. 2007); *Harvey v. Jones*, 179 F. App'x 294, 299-300 (6th Cir. 2006); *Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse [late] filing.").  Accordingly, Petitioner has not demonstrated entitlement to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 569 U.S. 383, 391-393 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.  In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 329 (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence.  *Id.* at 399-400.

In the instant case, although Petitioner may baldly claim that he is actually innocent, he proffers no new evidence of his innocence, much less evidence that makes it more likely than not that no reasonable jury would have convicted him.  *Schlup*, 513 U.S. at 329.  Because Petitioner

13

has wholly failed to provide evidence of his actual innocence, he would not be excused from the statute of limitations under 28 U.S.C. § 2244(d)(1).  His new habeas issue, therefore, would be time-barred.  Because Petitioner's new habeas issue would be without merit as untimely, there is no reason to stay this proceeding or hold it in abeyance while Petitioner pursues available state court remedies.

In short, Petitioner's challenge to the admissibility of the hospital drawn blood test, in its present form, does not raise an issue cognizable on habeas review.  Moreover, if Petitioner were to add his proposed cognizable issue, the claim would be untimely.

## V.    Suppression of the Michigan State Police blood draw test results

Petitioner next complains that the trial court violated his constitutional rights when it failed to suppress the Michigan State Police blood draw test results because there was no probable cause to support issuance of the search warrant.   Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars habeas review of Fourth Amendment claims).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim.  *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas

14

review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that provides a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). Here, Petitioner was afforded a hearing on his motion to suppress before the trial. Nonetheless, Petitioner argues that the state's mechanism broke down in his case because the state court did not afford Petitioner an evidentiary hearing.

There is no such requirement. *Good v. Berghuis*, 729 F.3d 636, 637-40 (6th Cir. 2013). Petitioner "could and did present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court

rejected it once more.  That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*." *Id*. at 640.  Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.

### VI.    Petitioner's sentence based on judge-found facts

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt.  Petitioner's argument is based on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *Booker*, 543 U.S. at 220, the Supreme Court determined that its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines.  One group of five justices concluded that the federal sentencing guidelines

16

conflicted with the Sixth Amendment.   Another group of five justices determined that the appropriate remedy was to make the guidelines advisory, thereby avoiding the legislative mandate that gave rise to the constitutional infirmity.   The Sixth Amendment was not offended if a discretionary sentence was based upon judge-found facts.

Subsequently, in *Alleyne*, 570 U.S. at 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.   Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* did not prohibit judicial fact-finding in scoring the Michigan sentencing guidelines that generated the minimum range under Michigan's indeterminate sentencing regimen.   *See People v. Herron,* 845 N.W.2d 533, 539 (Mich. App. 2013).[4]   The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial fact-finding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).   As a consequence, the Sixth Circuit at least suggested that the question is not a matter of clearly established Supreme Court precedent. *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 570 U.S. at 113 (emphasis added)).

The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).   The Michigan Supreme Court had reached the same conclusion in a 5-2 decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).   The

---

[4] Under Michigan's system, the guideline determination affects only the minimum term.   The maximum term is always the maximum punishment permitted by statute.

court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*.  *Lockridge*, 870 N.W.2d at 506 (emphasis in original).  Consequently, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional.   The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only.  *Id.* at 520-21.

Petitioner's sentence preceded the *Lockridge* decision; so, his sentence was the product of mandatory sentencing guidelines.  The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review."  *Id.* at 523.  Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision.  Accordingly, the Michigan Court of Appeals applied *Lockridge* when it decided Petitioner's appeal.  The fact that *Lockridge* applied to Petitioner's case, however, did not mean that Petitioner was automatically entitled to relief.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ."  *Id*. at 522 (footnote omitted).  In drawing those lines, the *Lockridge* court also effectively identified those defendants whose sentences did not violate the Sixth Amendment.

 If a defendant's sentence represented an upward departure from the mandatory guidelines minimum sentence range, the sentence was not constrained by the legislative mandate.

Instead, it was entirely an exercise of judicial discretion.  Similarly, if "judge found" facts were eliminated from the scoring of the guidelines, and the guidelines rescored using only facts found by the jury or admitted by the defendant yielded the same minimum sentence guideline range, any error would be harmless.  The act of selecting a sentence within the range was entirely an exercise of judicial discretion that was never constrained by the legislative mandate.

The Michigan Court of Appeals reviewed the trial court's scoring of the sentencing guidelines offense variable to determine if reliance on only "jury-found" facts would change the result.[5]  The appellate court found that the trial court assessed 95 points across five offense variables.  (Mich. Ct. App. Op., ECF No. 8-16, PageID.548.) The appellate court concluded that offense variables 3 (regarding physical injury to the victim, Mich. Comp. Laws § 777.33), 9 (regarding the number of victims, Mich. Comp. Laws § 777.39), and 18 (regarding whether operator ability was affected by alcohol or drugs, Mich. Comp. Laws § 777.48.), were scored based on facts necessarily found by the jury.  (Mich. Ct. App. Op., ECF No. 8-16, PageID.548.)  Relying solely on jury-found facts, those variables warranted the assessment of at least 70 points.

The appellate court found, at least implicitly, that the jury's verdict did not necessarily support the trial court's assessment of 15 points under offense variable 5 (regarding psychological injury to a member of a victim's family, Mich. Comp. Laws §  777.35) or 10 points for offense variable 17 (regarding the degree of negligence exhibited, Mich. Comp. Laws § 777.47).  Nonetheless, the appellate court found that the trial court was required, as a matter of law, to assess 10 points for offense variable 6 (regarding the offender's intent to kill or injure another individual, Mich. Comp. Laws § 777.36) based on a presumption of gross negligence for

---

[5] The *Apprendi* Court excluded from the scope of its new rule factual determinations regarding prior convictions. *Apprendi*, 530 U.S. at 490.  Thus, scoring "prior record" variables under Michigan's sentencing guidelines does not implicate Sixth Amendment protections.

offenses involving the operation of a vehicle while intoxicated.  (Mich. Ct. App. Op., ECF No. 8-16, PageID.548.)  Scoring offense variable 6, in turn, precluded scoring offense variable 17.  (*Id.*)

According to the Michigan Court of Appeals, assessing offense variable points based only on facts necessarily found by the jury resulted in a total offense variable score of 80 points.  That score, when considered with the prior record variable score and Petitioner's third habitual offender status, yielded a minimum sentence range of 50 to 150 months, the same minimum range under which the trial court sentenced Petitioner.

The legislative mandate dictated Petitioner's minimum sentence range.  The trial court's imposition of a 150-month minimum sentence from within that range was entirely discretionary and did not implicate the Sixth Amendment.  The appellate court's determination that relying only on "jury-found" facts yielded the same minimum sentence range meant that Petitioner had failed to demonstrate plain error warranting resentencing.

The determination that there is no plain error because there was no prejudice to Petitioner resulting from the use of "judge-found" facts is the equivalent of a determination that the error was harmless.[6]  "State courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may grant habeas relief only where those determinations are objectively unreasonable.  *O'Neal v. Balcarcel*, 933 F.3d 618. 624 (6th Cir. 2019) (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015)).

---

[6] In *United States v. Olano*, 507 U.S. 725, 734-35 (1993), the Supreme Court explained that determining the presence of "plain error" or "harmless error" involves the same analysis: does the error affect substantial rights.  When the Supreme Court held that habeas petitioners are not entitled to relief based on "harmless error," it noted that the existing body of federal case law would apply to the standard.  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Thus, the habeas "harmless error" analysis is the same as the *Olano* analysis. *Manning v. Huffman*, 269 F.3d 720, 726 n.3 (6th Cir. 2001).  The plain error test applied by the state court is also the same as the *Olano* analysis. *See People v. Carines*, 597 N.W.2d 130 (Mich. 1999); *People v. Grant*, 520 N.W.2d 123 (Mich. 1994).  Thus, the absence of prejudice that prompted the state appellate court's conclusion with respect to plain error suggests the alleged error did not have a "substantial and injurious effect or influence in determining the jury's verdict[,]" *Brecht*, 507 U.S. at 623, and, therefore, was harmless.

The appellate court's determination of the proper offense variable score that follows from using only jury-found facts is not only reasonable, it is unassailable.  Interpretation of state sentencing guidelines "is a matter of state concern only."  *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003).  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76).  Moreover, the appellate court's determination that no prejudice could result where the scored guidelines using only "jury-found" facts yield the same minimum sentence range yielded using "judge-found" facts is not only reasonable, it is logically unavoidable.  Whether the trial court exercised its discretion to select a minimum sentence from a range of 50 to 150 months based on judge-found facts or exercised its discretion to select a minimum sentence from a range of 50 to 150 months based on only jury-found facts simply does not matter. Accordingly, Petitioner has failed to demonstrate that the appellate court's determination of harmlessness is unreasonable and he is not entitled to habeas relief on his claim.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that Petitioner's request to stay this matter and hold it in abeyance pending his exhaustion of state court remedies with respect to new claims be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:    September 25, 2019                          /s/ Maarten Vermaat
                                                      Maarten Vermaat
                                                      United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).